Good morning. May it please the Court, my name is Victor Olapunina. I'm here with Co-Counsel Mr. Ben Carson in the role of representing the appellants in this matter, the GXP. The purpose of this case is really standing. We believe that both the Vanquishing Court and presenting or deciding that appellants in this matter had no standing to bring the action that we have brought in the Bankruptcy Court. Not just standing, because the BAP went on to say you'd lose on the merits if they hit to the merits. That's correct, Your Honor, they did do an alternative fighting on 12B-6, a failure to state a claim for relief. Now we'll get to that, but you are correct that they ruled that. We believe that was an improper use of the so-called right for any reason doctrine, because in fact, the judge below, the trial judge, had not granted the motion for 12B-6. It happens all the time in our court. I mean, a district judge may grant a summary judgment on one ground, and we wind up granting as affirming, but on an alternative ground. And so, I know your briefs kept talking about reversing the Bankruptcy Court. I don't see it that way at all, and we never term it that. So, I think all of this is on the table. Well, I agree with you that it's on the table, but we think that that reasoning applies when, in fact, you're going to reverse the decision, say we disagree with it. Now we affirm. I've affirmed a good number of our panels have affirmed a good number of summary judgments on alternative grounds, because what we're affirming is the judgment, not necessarily the same reasoning, but it's the bottom line that's articulated in the firm, and we are, the BAP was affirming the judgment of the Bankruptcy Court. We did two things. Our argument is that it affirmed, but it can only affirm on alternative grounds, and it's going to reverse on the grounds stated by the lower court. No, there are plenty of cases. We've just said this issue's easier. We're doing it this way. We don't have to reverse. We never use that term, but we don't have to discuss the ground relied upon by the District Court or Bankruptcy Court at all. The other ground we have for why that was improper is that it, in fact, expanded the relief, and that is difficult, because both ways, the case is extinguished. No standing, the case is extinguished. Fair to state a claim, the case is extinguished. The relief is the same. If the decision of the court below, the fact that there was no standing stood and that was it, we could and still could, we still could go back to the Delaware Court where we, this matter started, because the Delaware standard for standing would be different than the Article III standards, and so there's been no judgment on the merits. We also are, we fact that with respect to standing, that's not a decision on the merits. It's a decision, there's no jurisdiction. Well, in a context where the standing grounds is the failure to suffer an injury, in fact, and the lack of causation, those are substantive determinations, which would pretty quickly, I think, preclude any other court from picking up the case and trying to run with it. Well, the, you may be right, but that's a factual determination that should be made at least with respect to some judgment motion was here, there was no evidentiary hearing. It was all, all those things were done on an emergency basis. So there was no trial, there was no... What I found most interesting about your presentation on those subjects is that your arguments are all of the kind you're articulating now, which we can talk about, but there's no argument that I found in your briefs that seriously contested the factual conclusions of the bankruptcy court, which is that your alternative theory that if allowed to proceed, the reorganization plan proposed by the debtor would be accepted, or they'd negotiate something better. The bankruptcy court was very blunt in rejecting that. The BAP was very blunt in rejecting that, and I see arguments saying, well, there was other evidence they should have considered, but what I don't see is any argument that says there's evidence that should persuade us that the bankruptcy court was purely erroneous in concluding that the deal that the debtor wanted to push forward would never have been adopted. Well, I, the problem... Am I wrong about that? Do you make an argument that the bankruptcy court was purely erroneous in its factual determination? We do make that argument, Your Honor. Where? I believe it's a page. We have a section heading called clearly erroneous, and we assert that it was clearly erroneous because these claims were made without an evidentiary hearing because, on an emergency basis... Summary judgment is granted all the time, especially in this district, without an evidentiary hearing. But based on declarations, Your Honor, based on sums, they appear there was nothing. If we were to agree with you that this was not a standing defect, and the issue is then whether or not an alternative grounds for dismissal of the claims with prejudice was warranted, would we view that as a 12B-6 in that context, and so it would not be a question of evidence of clearly erroneous? Yes. I agree with that, Your Honor. But there, and here's where I think there may be a nuance of difference, you're focusing on the fact that the bankruptcy court limited the alternative 12B-6 on statute of limitations to five of the counts. Correct. And didn't address the other two. Correct. But really what happened, and I think your strongest argument on the standing point, is that the merits basically got done under the guise of 12B-1. Completely. But then that raises the issue whether the alternative ground for affirmance is whether those merits that were improperly put into a 12B-1 box nonetheless fail under a 12B-6 box under Iqbal. Can you address that? Yes. I think we do argue that, in fact, we satisfied at the pleading stage, not to say we might lose later, but at the pleading stage, we pled the breach of the agreement. The fact that we had an injury. Fair traceability, we argue. None of this, everything in this case was going smoothly. There was a disclosure statement presented and no opposition to it by any creditor. Everything was going smoothly in the case. Things needed to be negotiated. It wasn't. And then on November 18th, the breach of the contract, the defendants in inspection had revealed, made an offer using improperly taken information from us. I mean, I understand the theory of breach of contract and other breach of, attendant tort duties. The problem is that the chain of causation runs through an independent decision of a That's a tough link to have in the chain vis-a-vis proximate causation, especially when the judge says that the offer that you claim was tainted didn't make any difference. I agree. So don't you need to, under Iqbal, to plead sufficient facts to establish a plausible inference that you really can show this chain of causation when you have the judicial officer saying the factor was not relevant, was not taken into account in the decision-making that is critical to the chain of causation? If you look at the record, the motion for the appointment of the examiner and trustee initially caused all this. The record shows that the reason for the motion and the reason for the support by the breach in writing, a lawyer for the creditors' committee said, the reason we're supporting this is because of this, we cannot trust the debtor to review this new offer that we've received, which was the breach. So they, the creditors' committee, admits that's why they're joining. The bankruptcy judge in her decision says, the reason I'm now willing to appoint a trustee is because the creditors' committee has changed its mind. So there we've, it showed why did she rule, now, this case had been going on for several years, there had been no motion for a trustee, no motion for examiner, none of that. What happened? They breached the contract. They shared our confidential information, they made a hostile bid for the company. So we're adding on. You can make that argument that the bankruptcy judge noted several other things which reflected why she had lost trust and confidence, why she thought the creditors generally had lost trust and confidence, and why the plan put forth by the debtor wasn't going to be approved anyway. Indeed, her comment is that GXP, this is back, GXP could not plausibly show the alleged damages debtor incurred were proximately caused. And that's the problem raised by Judge Collins because you have to produce allegations that plausibly lead to the conclusion that you're entitled to the relief. And with the bankruptcy court, confirmed by BAP, having concluded that the causation was broken, how is the pleading that you've offered up going to satisfy the requirements of ICCPL? Well, first, I point out that the trial judge, the judge in most of the evidence, did not grant the 1286 motion for failure to state a plan for reason. So, she didn't deny it. I mean, she, I have to go on to the second one. So, she stopped at one, but the findings seem equally applicable. If she finds, and she says it was, quote, undisputed, quote, undeniable that both the creditors and the bankruptcy court had lost trust and confidence in debtor management. She also said the plan was flawed for being infeasible and violating the absolute priority rule. She gave lots of reasons for saying that causation chain was broken. And, I'll go back to the question I raised earlier. I look at your brief, and everything I see are legal reasons why she should have had a hearing, or it was premature, or it was like a preliminary injunction. I don't see any collection of facts that would make the allegation plausible. Well, you know, in our brief, we indicate, I think 20, if you're wrong, the exact number, the injuries that we suffered, those are facts. No, you're alleging, but that doesn't establish causation. And, indeed, that laundry list includes something that doesn't seem to belong to debtor anyway. But, go through that list. I went through it in detail. And, I have a hard time seeing the connection to any of those in the light of the bankruptcy judge saying it wouldn't have happened. But, the problem with this,  is, I think what Judge Carr focused on, is this was a, not a trial. What happened here is that the judge, and the baton, actually, most egregiously, turned what it was, a 12B1 hearing, and it put the decision on standing, turned it into a trial on the merits. And, that wasn't a trial. It's more analogous to a summary judgment, based on the fact that the bankruptcy court was itself presiding over the process, and, as Judge Collins indicated, would have to give approval. And, she made it very clear, no way this debtor's plan is going to be approved. So, where's the causation? Because, everything I see in your list of purported injuries, is connected to the notion that the alternative plan would have been approved, and debtor would have come out with more than they did. Our, our causation is, the sequence of time of when she ruled, what she did. It all happened on that one day, November 18th, when this hostile bid was made using confidential information. That's our, that's our argument. We don't even need to prove it at this stage. I think we have to, so, you have to give plausible allegations, and if the bankruptcy judge is saying, based on my role here, it wasn't going to happen, so there's no causation, and there's no injury in fact, because it wasn't going to happen because of the alleged breach of the NDA, then where are the plausible allegations that let us get past that? And that, and then you get to the point where this was not a full evidentiary hearing. It was, it was truncated. I, I've never heard it before. We, we affirm summary judgments all the time without any hearing whatsoever, let alone evidentiary hearings,    but, if at one point in time, if Judge Collins alludes to the fact that an ordinary bridge contract lawsuit, I don't' care what kind of case, if at the end of the day, the jury comes back or the judge comes back or the judge comes back and says, not liable, not liable, we do not thereby go back to the very beginning and say, aha this claim had no injury in fact, so we just misguard, or stand. Once the case has gotten started, Once the case has gotten started, we have that jurisdiction and can adjudicate it. Even if the end result is a finding that there was no injury in fact. Here, the complication, I think, came out of the fact that when the bankruptcy proceeding, when the debtor filed Chapter 11, all these claims were potentially on the table. Now it may be that the adversary proceeding doesn't get filed until after the debtor's assets have been otherwise sold off, but the bankruptcy proceeding is still going on and nobody questions the bankruptcy court's authority over the bankruptcy proceeding. And I'm wondering, and I've looked hard, my law clerks have said, we don't find much guidance on this, this is an odd situation, but why are we looking at a point in time late in the bankruptcy proceeding when in fact, if these allegations have been brought before the debtor was actually broken up, not after most of the trauma has already occurred, there'd be no question about standing. We would be dealing, as Judge Collins indicates, with the substantive determinations that were made. And I can understand, in retrospect, how we got off onto the standing track, but at this point in time, is there any real reason for us to continue to view it through that lens? Why don't we just deal with the factual determinations made by the bankruptcy court and by the bank? I think if your honors were to determine that the 12B1 jurisdictional analysis was improper or unnecessary, certainly the 12B6 analysis... I mean, it wouldn't be unnecessary. We would have to address whether there's Article III standing. Correct, yes. It's a threshold issue that must be determined and standing must be confirmed before proceeding to the merits. But if, for the same reasons that the BAP determined that injury in fact and causation were lacking, that equally applies to the 12B6 analysis. So if, in this instance, because your honors were to find that it was so intertwined with the merits or standing existed, the 12B6 analysis would get us to the same conclusion and dismissal of prejudice would be appropriate for the same... You might limit, though, what we could look at. For 12B6, it's only the complaint things that are referenced in the complaint and things that can be judicially noticed. And a lot of other stuff got on the table here. That's correct, your honor. But in this case, we also have the law of the case and the Bankruptcy Appellate Panel and the Bankruptcy Court both correctly applied the law of the case doctrine to this particular circumstance. There's case law that suggests, albeit outside of the Ninth Circuit, that the law of the case doctrine applies equally to bankruptcy proceedings. Is that basically, in this context, a preclusion doctrine? We did brief the law of the case doctrine before the Bankruptcy Appellate Panel as part of supplemental briefing, and it's slightly different than preclusion. But it does, sort of... Generally speaking, the courts are prevented from relitigating issues that were matters come to us. The law of the case, in the lower court sense you're talking about, drops out. Because you're talking about lower court law of the case where the decision made earlier in the litigation at that level is not going to be revisited. But when it comes up on judgment to us, everything merges into the final judgment. That falls out the wayside and you can go back and challenge the earlier stuff and you're not bound by it. So that's why it seemed to me that your argument really wasn't law of the case in that sense because it wouldn't work here. It was that they didn't take an available appeal from the earlier determinations of the bankruptcy court that then became final. And then under, I think it would have to be preclusion, not law of the case. Am I missing this? Help me out here. Yes, I understand your question now. Apologies, Your Honor. So with respect to the law of the case, the bankruptcy court correctly used her discretion to apply the law of the case. Here, when Your Honors are considering the 12b-6 arguments, and I believe the questions to my colleague opponent touched on this, but there has been no showing that the findings of the appointment order were clearly erroneous. And so because the debtor never appealed the decision, even though it had the opportunity to do so, those findings are now binding on the appellant. Should we, to be cautious, should we remand the issue of the 12b-6 dismissal because so much of the court's analysis seems to tie back to its earlier 12b-1 jurisdictional issues. And obviously there's a lot of overlap, but it's not clear. There isn't much reasoning. A lot of it's just referencing to its earlier Article III standing analysis. So is it maybe a better approach to send it back to the BAP and to take a look at it, look at the 12b-6 dismissal more carefully and set out the reasons without just referencing  I don't think that would be necessary in this case, Your Honor. I think there is sufficient discussion of the record, the reasons for GXP's inability to show injury in fact, equally applies to the 12b-6 elements. And so for that reason, I think there is actually sufficient discussion from the BAP already. And so I don't think remand would be necessary on that basis. So much of it in the 12b-6 analysis, they're referring to lack of legally cognizable injury. Again, maybe there's a natural flaw, maybe they're the same, but you typically wouldn't look at it that way when analyzing the merits of a contract claim. It seems a little bit odd. You're kind of putting a square in a circle in some ways. I agree, Your Honor, that it is somewhat unusual in this instance, but again, it goes back to this sort of bankruptcy overlay that is specific to this case. And so when you have that bankruptcy overlay where essentially what debtor is arguing is that they had a right to a confirmable plan, they had the right to withhold information from the creditors, withhold information from the court, none of that establishes a legally cognizable theory, and so it is unusual in the sense that we're not looking at was there a contract, was the NDA breached by disclosure of confidential information. So it is slightly unusual and nuanced in that respect, but I do think that the analysis is well-developed from the bankruptcy appellate panel on the 12B6 elements. One additional point that I'd like to raise, which was also discussed in the debtor's reply brief, is this issue that, or their contention, that breach of contract automatically confers standing or automatically establishes injury in fact, and the debtor in their reply brief cites to the Perry v. Newsom decision and the Dinerstein decision on the Seventh Circuit. But as a point of clarification, Dinerstein in the Seventh Circuit actually rejected the very argument that the debtor is putting forward here, that a breach of contract automatically establishes injury in fact. And the Dinerstein decision, I believe, is instructive on that point. It interprets Spokio, TransUnion, and Full to both. It's not just breach of contract. It's breach of contract with the novel theory of causation that leads to the loss of a big pile of money. Losing a big pile of money and coming into court and saying, I want that money, is an injury in fact. That is correct, Your Honor, although in an ordinary breach of contract case, yes, I would argue that economic damages would be injury in fact. But here, there is no legally cognizable interest. Because it's the merits. That's the problem in this case. It's a merits claim that this contract and tort theory is just too novel a theory. But that's a claim that's a substantive issue of contract or tort law and their causation requirements. But it certainly pleads an injury in fact to say that they breached this agreement and then that led to this, led to this, and then I lost all this money at the end. That's injury in fact. It's traceability. It may fail on the merits, but this is why I don't see the jurisdictional wrap around this. Understood, Your Honor. And if that is the opinion of this Court, then the 12B6 analysis as we just discussed would preclude GXP from asserting these same claims on the merits. I mentioned that I've been trying to research, didn't find anything. The law clerks are better at it. They didn't find anything. You've been researching it probably more than we have. Have you encountered a case where dismissal based on lack of standing has been based on prior adjudications, a preclusion type argument, which is as we've discussed is really how we wind up viewing it. I didn't find anything. It's a novel situation, and again, I understand why it got directed that way. But the notion that preclusion as a result of prior adjudication, which is the only reason why the allegations of plaintiff wouldn't have standing, have the injury and so forth, but preclusion leads to dismissal based on lack of standing. I didn't find anything like that. Have you? I have not. As I stand here right now, Your Honor, I cannot think of a case in that specific procedural context, no. So do you really want us to be the first, or would you rather have us go to the merits? I'd be happy to submit additional briefings. I actually have not sort of looked specifically into that specific procedural context, but I do think that proceeding to the merits would be appropriate in this case because these same elements and these same deficiencies in GXP's claims apply equally to the merits, and so that would be an appropriate sort of step forward for this Court to proceed to the merits on the 12-6 failure to state a claim grounds. I see I'm getting low on time, so I just wanted to touch briefly on the ‑‑ there's a point in the reply brief that raises the stern objection that there is no ‑‑ that they've raised the stern objection and that they are entitled to an Article III decision maker to review the case. We argue that they've waived their stern objection by bringing their claims before the Bankruptcy Court as well as appealing to the Bankruptcy Appellate Panel, and, of course, review by this Court would alleviate the concerns of the stern objection, which, of course, is usually in the circumstance of a defendant objecting to being brought before an Article I judge. And so with that, unless Your Honors have any additional questions, I would just respectfully request that this Court affirm the Bankruptcy Appellate Panel decision as well. Thank you, Counsel. We'll hear a follow‑up now from Mr. Carson. Thank you, Your Honors, and may it please the Court, Benjamin Carson, co‑counsel for the appellant. Real quick housekeeping question, Your Honor. I think you did say I have the full five minutes. Is that correct? Okay. Thank you, Your Honor. So I wanted to begin. I had two general and one specific points to make. I wanted to begin with the specific point, which was reflected in opposing counsel's argument, and it was also discussed in both the BAP and the Bankruptcy Court order, and that is that we somehow made the salivation in the complaint that that first plan, as we termed it with capital F, capital P, would have been confirmed. We never made that claim. The only claim we made, and this relates to the theory of causation too, is that we were in the process of negotiating a confirmable plan with the official creditors committee and that defendant's breaches disrupted those negotiations. So that doesn't cause an injury unless you wind up achieving through those negotiations a confirmable plan that would have bettered your client's position, and the Bankruptcy Court made it pretty clear that wasn't going to happen. Well, the way I read the Bankruptcy Court's order, Your Honor, was that I don't recall seeing specific findings saying, had you continued to negotiate with the OCC, you never would have confirmed the plan. I know she said the plan you submitted was not confirmable, but we never made that claim. All we said is we were negotiating with them. She said that she had lost confidence, that the creditors generally had lost confidence, that it was too late for you to have the exclusive opportunity to offer a plan. And it was pretty explicit. I mean, the BAF summary, GXP could not plausibly show the alleged damages that occurred were approximately caught by defendant's purported breach, and the reason was you weren't going to emerge with something better. The Bankruptcy Court was very clear in saying the creditors at that point wanted cash because the company was in such distress that it couldn't last much longer, and so ultimately the sale was not contested, the appointment of an examiner was not contested. It strikes me as it wasn't just the opening bid in the form of the first plan that was at issue. None of the alternatives appeared to be palatable to the Bankruptcy Court or to the creditor. And let me get to the question that I posed earlier. You referred me to page 20 of the reply brief, which is kind of late to start raising issues, in terms of where the Bankruptcy Court's findings are disputed. And I get to page 20, and basically I'm referred to an appendix A, which lists disputed facts, but not with evidence, not with anything that says the Bankruptcy Court's treatment was clearly erroneous. This is like in a summary judgment context, and I suspect that your district, as most of the other districts have seen, requires parties to submit disputed facts and so forth. Listing something as disputed doesn't fend off summary judgment, doesn't fend off a determination that an argument's precluded. And so I've got the same problem I had at the very beginning of our colleague's argument, which I don't see any serious dispute here that puts at issue the Bankruptcy Court's factual determinations. Anywhere else could I find it because appendix A doesn't do it? Well, where you would find it, Your Honor, is in the statement of facts in the opening brief. However, I do want to point out the causation theory as alleged in our complaint is not dependent on whether or not those findings in the appointment order are true or not. We disagree with those findings. However, we allege in the complaint, our allegations state, that this appointment order never would have been entered but for the defendant's submission. The theory of causation that, concisely, that your complaint rests on, what is the but-for chain of injury, what's the but-for world, what would have happened? Certainly, Your Honor. So the defendant submits the hostile bid, breached the NDA. That causes the official creditor's committee, by their own admission, to switch their position and now support an emergency motion for the trustee. The Bankruptcy Court states on the record she is now inclined to support appointing a trustee because the creditor's committee changed their position. She then, after a couple of hearings, enters the appointment order in response to the motion to appoint a trustee. She never, prior to the submission of the hostile bid, made any findings on the record, nor did any other creditor request she make findings saying she doesn't trust the debtor. They haven't submitted a confirmable plan. They have the examiner and then, because you haven't gotten to injury yet. While we were injured, the injury was disrupting what would have been negotiations over a confirmable plan with the OCC. That was disrupted. That is not an injury, in fact. The disruption in some vague sense of a litigation proceeding is not an injury, in fact. Well, Your Honor, it would have been. We're working for damages in the claim, so you obviously think this is, the chain of causation goes to the pile of money, but I haven't heard it yet. I'm sorry, Your Honor. I think I misunderstood the question, but the injury would have, so what we are alleging in the complaint is that those negotiations would have culminated in the confirmation of a plan that would have allowed the debtor to retain control of its business and sell it at a reasonable market price, which we contend in the complaint is about $20 million. That chain of causation is extraordinarily speculative, and it involves links in the chain where the judicial decision maker has to do certain things, and so that's where I have trouble seeing your theory. I don't see how this chain of causation satisfies basic elements of proximate causation and that you've pleaded enough facts to plausibly establish that a trier could infer plausibly that this chain of causation produces that loss at the end. Well, one answer to Your Honor's question could be that, you know, maybe we need to amend the complaint and explain it better, and that's one issue we haven't discussed yet is why did the bankruptcy court say, dismissed with prejudice for lack of standing, no leave to amend. That's generally disfavored in the Ninth Circuit. I know there are some exceptions, but in general they're pretty hard to meet. Did you ever offer up any allegations that would satisfy the need? I mean, you haven't done it on appeal, so I'm not sure why the bankruptcy court could assume that, yeah, you could amend the complaint in a way that would be successful. But why should we believe that you could, because you haven't told us what the amendment would be that would be successful. I think the amendment, Your Honor, would simply be better articulating our causation theory. I think the causation theory is in the complaint right now. Articulate it right now. Okay. We thought we heard it. I think it didn't make the connection it needs to make because you've got to get past the observations made by the bankruptcy court, which have preclusive effect, unless they're wrong. So give us your shot at what amendment would suffice. I think the amendment that we would make would be explained better. We need to better explain, better articulate. No, that's like the attachment A, the appendix A. These are facts we dispute, but not actually giving us anything that offers serious dispute. You would need to plead a plausible claim that leads to the $20 million or whatever pot of gold at the end, and I haven't heard anything close to that. So here, if you want us to send it back to give you a chance to plead again, you've got to give us reason to think there's something there that is not wishful thinking. Well, we can certainly plead in terms of additional facts, Your Honor. It's describing more how those hypothetical negotiations with the OCC would have gone and the details of how it would have resulted. I've got a wish list, but it has to be plausible. And in the face of the findings made by the bankruptcy court, it's hard to see how any of that could be plausible. Yes, that's true, Your Honor. However, as our theory of causation, as expressed in the complaint, states that that order never would have been entered but for the entry of the hostile bid. It simply wouldn't have been accepted. That's our obligation. What makes that plausible in the face of what the bankruptcy court and the PAP have said? What makes it plausible, Your Honor, is that the bankruptcy court never made any findings remotely close to this before the hostile bid was entered and before the defendants breached the contract. And so you're asking us to assume that, oh, the scales would have fallen for her eyes, except that she raised all sorts of questions in connection with the hostile bid, including when the principal of your client came to know about it, including whether the debtor actually could fairly enter into this, given its duty of transparency. Was it allowed to hold back information from the creditors? I mean, there are just so many questions here that you have to overcome. And you've had the opportunity in your briefing to the BAP where it wasn't taken up. You've had your opportunity in the briefing to us where it hasn't taken up. So why exactly are we supposed to say, well, we'll give you still another shot at offering up an amendment that would suffice when you can't tell us what that amendment would be beyond wishful thinking? Because, respectfully, Your Honor, what you're describing are allegations that go to proof, not to the sufficiency of our allegations to establish standing or even to establish plausibility under 12b-6. Okay. Let me ask you one other question about your response to counsel's point about Stark. You know, I understand you made a reservation in the bankruptcy court. You did put in a statement that you were not consenting to entry of a final judgment by the bankruptcy court. But then as it got later in the case and the bankruptcy court did enter a judgment, there wasn't then an objection. And then when you went up on appeal, you have an option, an absolute right to elect to go to the district court rather than the BAP. And you did not file that request to go to the district court where you could have gone and said this is a Stern claim. And therefore under Stern to make this constitutional, you have to treat the BAP judgment, I mean the bankruptcy judgment as essentially a report and recommendation and now I get my de novo review. You waived all that because you went straight to the BAP and bypassed your option to carry out your reservation. Why isn't that dispositive of your Stern objection? Well, Your Honor, I see a difference between entering a final order and appealing an order. We did elect to have the order entered by the bankruptcy court heard on appeal by the BAP. But that doesn't change the fact that only the district court, per our Stern objection, could enter a final order. No, but once the bankruptcy court had entered the judgment, under your Stern objection, to take logically and preserve your Stern position, what should have happened is the bankruptcy court should only have entered a report and recommendation. And then you go to the district court and get your judgment. The bankruptcy court instead enters the judgment, but you could have accomplished your Stern objection by then appealing to the district court, telling the district court that under Stern you must, even though it's labeled a judgment, you must treat it as a report and recommendation because it's essentially what Stern says. And now give me my de novo judgment of the district court. But you let that go. You went to the BAP instead. So I know I'm out of time, but if I could briefly respond. We're asking questions. Oh, yes. Thank you. I appreciate that. And just to clarify your Honor's question, are you saying that we could have gone to the district court and said, yeah, we're appealing to you, but really what we're doing is asking you not to enter a final judgment, sort of twisting the procedure a little bit? Well, you know, your Stern position is that the bankruptcy court couldn't enter the final judgment. It could essentially only do a recommendation, and then you'd go to the district court. The bankruptcy court then gave the final judgment, and you didn't carry out the Stern procedure by going to the district court. You instead went to another non-Article III judgment. Yeah. Your Honor, and again, we're getting into some of the nuances of Stern here. I believe that the difference between appeal and entry of judgment was significant enough that by going to the BAP, by appealing to the BAP, we weren't weaving our way in. The only way you get to the district court under the sort of Stern procedure that you think should have happened, the only way you go to a district court is what's called an appeal under 158A. Okay. That's how you mechanically get into the district court. And so that was your chance. You had your Article III tribunal was handed to you as of right, and you let it go. Presumably if you prevailed in the BAP, you wouldn't be raising these Stern objections today here, right? Had we prevailed in the BAP and had gone back to bankruptcy court, we would have inserted our Stern objections if the bankruptcy court agreed to it. But you wouldn't throw away your win. I mean, that's the problem here. It's a way of trying to get both ways. If you win, you wouldn't raise it. If you lose, then you raise it now here before us. That's the whole point of the way it was adopted, to prevent things like that. Yes, I understand that, Your Honor. However, we did raise our Stern objection at the earliest possible opportunity, unconditionally. We didn't say this is dependent on what happens in the bankruptcy court. We didn't raise it after the bankruptcy court gave us a bad judgment. Who filed the adversary proceeding that ultimately brings us here today? GXV Capital LLC. And where did they file it? In the bankruptcy court. In the bankruptcy court, yes. All right. Thank you, Counsel. Thank you, Your Honors. The case just argued will be submitted. We'll proceed to your argument in the next case.
judges: CLIFTON, COLLINS, LEE